

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 31, 2015**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| American Housing Foundation, | § | Case No.:  09-20232-RLJ |
| | § | |
| Debtor. | § | |
| _____ | § | _____ |
| | § | |
| Walter O'Cheskey, Trustee of the AHF | § | |
| Liquidating Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adversary No. 11-02103 |
| v. | § | |
| | § | |
| CitiGroup Global Markets, Inc. and | § | |
| CitiBank, N.A., | § | |
| | § | |
| Defendants. | § | |
| | § | |

Page 1

## **MEMORANDUM OPINION**

Defendants, CitiGroup Global Markets, Inc. and CitiBank, N.A. (collectively, Citi), seek dismissal of *Trustee's Second Amended Complaint* [Doc. No. 69], contending that a newly alleged (and late-filed) fraudulent obligation claim cannot relate back to the original complaint, *Trustee's Complaint to Recover Avoidable Transfers and Obtain Other Relief* (Original Complaint) [Doc. No. 1]; and, further, that the claims of actual fraudulent transfers and obligations do not meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure.[1]  The plaintiff, Walter O'Cheskey, Trustee, disputes both charges.

The Texas Supreme Court has recently declared that the four-year time limitations of § 24.010 of the Texas Uniform Fraudulent Transfer Act (TUFTA) is a statute of repose rather than a statute of limitations.  *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013).  This is a point not raised by the parties here, but it is critical to the question of whether the relation back doctrine under either federal or state law can be used to save an otherwise "extinguished" claim.  Tex. Bus. & Com. Code § 24.010 (1993) (providing that claims are "extinguished" if not timely brought).  The Court finds that it cannot.  As set forth below, the Court also concludes that, even if relation back principles do apply, the new claims set forth in the Second Amended Complaint do not, upon analysis, relate back and are thus not saved.  The Court denies dismissal of the claims of fraudulent transfers made with actual fraud, concluding that such matters are sufficiently pleaded to satisfy Federal Rule 9(b).[2]

---

[1] References to "Doc. No. __" herein refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Court.  Unless otherwise indicated, the referenced docket entry number can be found in the underlying Adversary No. 11-02103.  Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C., and the Federal Rules of Bankruptcy Procedure.  The Federal Rules of Civil Procedure are referred to as the "Federal Rules," while the Texas Civil Practice and Remedies Code is referred to as the "Texas Rules."

[2] The Court concludes it has jurisdiction and authority to decide the issues here.  The causes of action are "core" matters under 28 U.S.C. § 157(b)(2)(H) and (O); neither the plaintiff nor the defendants have questioned the Court's authority here.  The Court is issuing legal conclusions on a motion to dismiss; issues of fact are not considered.  A review of the Court's conclusions would thus be *de novo*.  *See Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2175 (2014).

## BACKGROUND

On April 21, 2009, certain alleged creditors filed an involuntary petition for relief against American Housing Foundation (AHF) under chapter 11 of the Bankruptcy Code. AHF filed a voluntary petition on June 11, 2009. The Court consolidated the two cases pursuant to Rule 1015(a) on July 17, 2009, "to allow for the applicable statutory periods . . . to run from the earlier filing date of the involuntary bankruptcy case." *Agreed Order Granting Motion to Consolidate Bankruptcy Cases* [Case No. 09-20232, Doc. No. 88]. Upon motion and hearing, the Court ordered the appointment of a chapter 11 trustee and then approved the appointment of Walter O'Cheskey as the trustee (Trustee) effective April 29, 2010 [Case No. 09-20232, Doc. Nos. 1096 and 1104].

Trustee filed the Original Complaint here on April 21, 2011, seeking avoidance and recovery of alleged fraudulent transfers made to CitiGroup Global Markets, Inc. (CitiGroup) during the two-year period prior to the petition date. Trustee labelled them collectively as "2-Yr Transfers."[3] The Original Complaint alleges actual fraudulent transfers and constructively fraudulent transfers under §§ 548(a)(1)(A) and (a)(1)(B), respectively, (and their complementary provisions, §§ 550 and 551). Trustee, by the complaint, also seeks recovery under § 544 of the Bankruptcy Code and §§ 24.005 and 24.006 of the TUFTA. The prayer requests judgment "declaring that the 2-Yr Transfers are avoided and set aside as fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548 and the Texas Uniform Fraudulent Transfer Act." Original Complaint at 13.

---

In the event a superior court determines that some or all of the causes of action here are not constitutionally core proceedings or not properly subject of this Court's authority, the conclusions here are submitted as proposed conclusions. *See Stern v. Marshall*, 131 S. Ct. 2594 (2011) (addressing constitutional authority of bankruptcy court); *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014) (holding that bankruptcy court may issue proposed findings and conclusions in a core proceeding over which the bankruptcy court does not have constitutional authority); and *Galaz v. Galaz (In re Galaz)*, 765 F.3d 426 (5th Cir. 2014) (holding district court may treat bankruptcy court's findings and conclusions as proposed).

[3] The term "2-Yr Transfers" occurs twenty-five times in the Original Complaint.

CitiGroup filed a prior motion to dismiss, which the Court denied on May 11, 2012. It then filed its answer on June 8, 2012. Following a status conference concerning dozens of adversary proceedings arising from the AHF bankruptcy case, the Court entered an Omnibus Scheduling Order that abated this proceeding (*and* other proceedings) on December 5, 2012; the abatement was subsequently lifted and trial was set for January 2015, and then reset to April 2015.

In early November 2014, Trustee filed a motion for leave to amend the Original Complaint to add CitiBank, N.A. as a named defendant and "to clarify" that he was also requesting that certain *obligations* be avoided as fraudulent obligations. *Trustee's Amended Motion for Leave to Amend the Complaint* [Doc. No. 42].[4] CitiGroup did not object, and the motion for leave was granted on December 11, 2014.[5] The *Trustee's First Amended Complaint* [Doc. No. 51], a copy of which had not been included with the motion for leave, was filed the next day.

Less than three months later, on March 3, 2015, Trustee filed his *Motion for Leave to Amend the First Amended Complaint* [Doc. No. 55]. According to Trustee, further amendment was needed, "out of an abundance of caution," to cite to the TUFTA. *Id*. at 2.[6] Citi objected. The Court denied Citi's objection by the *Memorandum Opinion* [Doc. No. 65] and *Order* [Doc. No. 66] entered April 30, 2015. The Court noted that "[a]ny prejudice occasioned by the proposed amendment would have initially arisen with the [First Amended] Complaint," and, further, that the amendments would "eliminate the confusion" caused by the poor drafting of the First Amended Complaint. *Memorandum Opinion*, Doc. No. 65 at 4. Concerning the First Amended Complaint, the Court stated as follows:

> [The First Amended Complaint] is not a model of clarity. It recites, in its jurisdiction and venue section, that the "statutory predicate" includes sections 544, 548, 550, and

---

[4] The fraudulent obligations are said to arise from the 2006 Capmark-CitiGroup Credit Application, the 2007 Amarillo Affordable Bond Refinancing Application, and the 2008 CitiBank Walden II Credit Enhancement Application. *Id.*

[5] *Agreed Order Granting Trustee's Amended Motion for Leave to Amend the Complaint* [Doc. No. 50].

[6] Trustee made no mention of other oversights in the First Amended Complaint.

551 of the Bankruptcy Code. In addition to asserting the same allegedly avoidable transfers as described in the original complaint, it also alleges that certain described transactions—the 2006 Capmark-CitiGroup Credit Application, the 2007 Amarillo Affordable Bond Refinancing Application, and the 2008 CitiBank Walden II Credit Enhancement Application—give rise to fraudulent *obligations* that are avoidable. These three transactions, according to the December 2014 Complaint, were entered into in November 2006, November 2007, and July 2008, respectively. It thus appears that the first transaction took place beyond two years prior to the bankruptcy filing.

Trustee clearly seeks avoidance of transfers *and* obligations by the December 2014 Complaint; the stated legal bases for avoidance, however, are muddled. As set forth above, the December 2014 Complaint, in the section addressing jurisdiction and venue, references both sections 544 and 548. But its specific statement of avoidance actions alleges that the various obligations and transfers are avoidable under section 548, with an additional reference to the complementary sections 550 and 551. *Then*, by its prayer, the December 2014 Complaint seeks judgment declaring that the obligations and transfers be avoided as fraudulent obligations and transfers, "pursuant to 11 U.S.C. § 544." Sections 550 and 551 are mentioned but section 548 is not.

*Memorandum Opinion*, Doc. No. 65 at 3–4 (citations omitted). The factual background section of the First Amended Complaint was entirely new.[7] The Court declined to rule on Trustee's request that the amendments relate back to the Original Complaint, stating that "[s]uch question should be considered within the context of the [First Amended] Complaint. The ruling . . . [was] thus made without prejudice to consideration of the relation-back question . . . ." *Id*. at 4.

Trustee filed the Second Amended Complaint on May 5, 2015. This complaint alleges fraudulent transfers and fraudulent obligations, citing to §§ 544, 548, 550, 551, and TUFTA. Citi filed a motion asking the Court to reconsider its ruling; Trustee responded. Hearing was held and the Court issued another *Memorandum Opinion and Order* [Doc. No. 75], entered June 29, 2015. Citi's principal contention was that the addition, in the Second Amended Complaint, of the two-plus year lookback for the fraudulent obligation count caused undue prejudice to Citi. *Id*. at 2. The

---

[7] The Original Complaint describes a Ponzi-like scheme between AHF's founder and certain "'soft-money' investors who knew, or should have known, that the investment was purely for illegitimate and improper tax purposes." Original Complaint ¶ 16. The facts alleged pertaining to Citi only concern transfers within the last two years that came from bank accounts owned or controlled by AHF. The facts in the new complaints speak specifically about a 2006 "Capmark Application," a 2007 "Amarillo Affordable Refinance Application," and a 2008 "CitiBank Walden II Credit Enhancement Application"—now avoidable because "[t]he equity interest of AHF in the subsidiaries which owed the indebtedness to be refinance[d] or enhanced had no value to AHF and its creditors." First Amended Complaint ¶¶ 6–17.

Court found that "Citi's statement that the fraudulent obligation cause is new [was] patently wrong." *Id.* The Court noted that, as between the First Amended Complaint (to which Citi did not object) and the Second Amended Complaint, "any additional hardship imposed on Citi by going back beyond two years [was] minimal." *Id.* at 3. The Court denied Citi's motion; the Second Amended Complaint is thus the live pleading setting forth Trustee's claims. Still, the issue of whether the amended complaints related back to the Original Complaint remained unresolved. The Court was clear that any prejudice to Citi from the Second Amended Complaint arose with the filing of the First Amended Complaint. *Id.* at 2.

Citi then filed its *Motion to Dismiss Trustee's Second Amended Complaint and Brief in Support* [Doc. No. 79], the matter pending here. Citi seeks a Federal Rule 12(b)(6) dismissal of the amended complaint for its "failure to state a claim for which relief can be granted." *Id.* ¶ 39. Citi contends that (1) the Second Amended Complaint does not relate back to the Original Complaint under Federal Rule 15(c)(1)(B); and (2) the claims for actual fraudulent transfers under §§ 548(a)(1)(A), 544, and TUFTA are not pleaded with sufficient particularity to satisfy Federal Rules 8(a)(2) and 9(b) for allegations of fraud.

Trustee filed his *Brief in Response to Motion to Dismiss Second Amended Complaint* [Doc. No. 85]. Trustee argues that the Second Amended Complaint need not relate back to the Original Complaint, but only to the First Amended Complaint, "which itself relates back to the Original Complaint." *Id.* ¶ 26. Additionally, Trustee submits that a Federal Rule 12(b)(6) dismissal is the improper remedy for a failure to relate back. *Id.* ¶ 30 ("Rule 15(c)(1)(B), in particular, merely governs *if* an amendment should relate back, not *what happens* should it not." (emphasis in original)). Lastly, Trustee contends that the heightened pleading standards of fraud do not apply in this case because there is no threat to Citi's good name, as "Trustee has not alleged that [Citi was] engaged in or even knew of the fraud perpetrated by AHF, but rather [that Citi] received fraudulent

transfers *as a result of that fraud*." *Id.* ¶¶ 34–35 (emphasis in original). And even if the heightened

pleading standards control, Trustee has sufficiently laid out the "who, what, when, where, and how"

of the alleged fraudulent transfers and obligations. *Id.* ¶ 38.

Citi then filed its *Reply to Trustee's Brief in Response to Motion to Dismiss Second

Amended Complaint* [Doc. No. 88]. Citi makes three arguments. First, it reiterates that, by the

plain language of Federal Rule 15(c)(1)(B) and case history, the Second Amended Complaint must

relate back to the Original Complaint, not the First Amended Complaint. *Id.* at 2–4. Second, it

denies Trustee's contention that, should the amended complaints not relate back, Citi is "required to

pass through multiple procedural hoops before a dismissal is warranted." *Id.* ¶ 7. Citi points out

that Trustee had only two years after the petition date under § 108 to bring a cause of action against

Citi; Trustee did not bring the claims within that time period, and thus the untimely complaint(s)

"may be dismissed without further procedure." *Id.* ¶ 8. Finally, Citi avers that the only "badges of

fraud" in Trustee's complaint relate to constructive fraud, not actual fraud, and thus they fail to

meet the heightened pleading standards. *Id.* ¶ 9. Citi requests that the Court "dismiss all Counts

seeking to avoid the Capmark Application" and those for actual fraudulent transfers or obligations.

*Id.* at 6.[8]

## DISCUSSION

Federal Rule 12(b)(6) mandates dismissal if the complaint fails "to state a claim upon which

relief can be granted." Untimely complaints that are barred as a matter of law are properly subject

to dismissal under Federal Rule 12(b)(6). *Jones v. Bock*, 549 U.S. 199, 215 (2007) (finding

dismissal appropriate under Federal Rule 12(b)(6) if relief is barred by the applicable statute of

limitations). An out-of-time claim raised by an amended complaint can, however, "relate back" to a

---

[8] A strict reading of Citi's motion reveals that Citi seeks dismissal of the alleged fraudulent obligation claim arising from the Capmark Application; it does not specifically seek dismissal of the fraudulent obligation claims arising from the other two obligations mentioned at note 4 *supra*.

prior, original complaint if allowed by "applicable" law, or if the claim arises out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(A), (B). If the amended complaint does not relate back, the "amendment [is] futile." *Baker v. Carter*, No. 4:12-CV-478, 2013 WL 1196106, at *4 (E.D. Tex. Mar. 22, 2013) (citing *The Cadle Co. v. Riggert (In re Riggert)*, 399 B.R. 453, 459–62 (Bankr. N.D. Tex. 2009) (finding failure of amended complaint to relate back to timely original complaint rendered the new complaint futile)).

If the late-filed claims of an amended complaint do properly relate back, dismissal is inappropriate. *See Matter of Bercier*, 934 F.2d 689, 693 n.7 (5th Cir. 1991); *see also Baker*, 2013 WL 1196106, at *4 ("If . . . the second amended complaint relates back to the original complaint, it would be timely and, therefore, amendment would not be futile.").

## A.

Federal Rule 15(c)(1) refers to the date of the "original pleading" for relation back. The "original pleading" is the last timely filed pleading. *See McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 726 (10th Cir. 2011) (comparing a second amended complaint with the initial complaint); *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) (relating a second amended complaint back to the original complaint); *see also Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 480 B.R. 480, 493 (S.D.N.Y. 2012) *aff'd*, 541 F. App'x 55 (2d Cir. 2013) ("Accordingly, the Preference Claims [from the third amended complaint] do not relate back to the original Complaint—*the only timely pleading*—and thus were properly dismissed by the Bankruptcy Court." (emphasis added)); *but see Musicland Holding Corp. v. Best Buy Co., Inc. (In re Musicland Holding Corp.)*, No. 06-10064, 2010 WL 3719310, at *1 (Bankr. S.D.N.Y. Sept. 16, 2010) (comparing the second amended complaint with the first amended complaint *because the first amended complaint was timely filed*).

## B.

### 1.

A bankruptcy trustee under § 544 steps into the shoes of an unsecured creditor and may avoid fraudulent transfers or obligations under applicable state law, which here is TUFTA. *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 675 (S.D. Tex. 2007). Section 24.010 of TUFTA provides that a cause of action for a fraudulent transfer or obligation is *extinguished* unless it is brought "within four years after the transfer was made or the obligation was incurred." To reach TUFTA through § 544, a trustee must also comply with § 546.[9] Section 546 requires that an action under § 544 commence within "the later of . . . (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee . . . ." The order for relief was entered April 21, 2009—giving Trustee until April 21, 2011 to commence the action. The Court appointed Trustee on April 29, 2010—giving Trustee until April 29, 2011 to commence the action. Trustee filed the Original Complaint on April 21, 2011, which is compliant with both limitations of § 546.[10] The First Amended Complaint was filed on December 12, 2014, three-plus years too late. The Original Complaint is the only timely filed complaint under § 546.

---

[9] Contrary to Citi's interpretation, § 108 is not applicable here. "[T]he two limitations periods in the Code relate to different causes of action: § 108(a) involves a trustee's actions brought on behalf of the debtor, whereas § 546(a) limits the time a trustee has to commence an avoidance action as representative of the estate." *Matter of Princeton-New York Investors, Inc.*, 219 B.R. 55, 59 (D.N.J. 1998). Trustee is attempting to avoid fraudulent transfers as a representative of the estate, so only § 546 applies. *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 675 n.8 (S.D. Tex. 2007) ("When a trustee commences a cause of action under section 544(b) of the Bankruptcy Code, he steps into the shoes of an unsecured creditor rather than those of a debtor. Section 108 involves a trustee's actions brought on behalf of a debtor and does not apply . . . ." (citations omitted)); *Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 520 (5th Cir. 2009) (same).

[10] The three applications that raise the fraudulent obligation counts were entered into on November 22, 2006, December 5, 2007, and July 5, 2008, respectively. Under TUFTA, any claim is *extinguished* if not filed within four years. The general consensus among the courts, however, is that the limitations period of § 546 "preempts" a state's statute of limitations (or repose). *Rund v. Bank of America Corp. (In re EPD Inv. Co., LLC)*, 523 B.R. 680, 692 (B.A.P. 9th Cir. 2015) (holding "the trustee may bring the avoidance action under § 544(b), provided it is filed within the limitations period in § 546(a)"); *Gibbons v. First Fidelity Bank, N.A. (In re Princeton-New York Investors, Inc.*, 199 B.R. 285, 298 (Bankr. D.N.J. 1996), *aff'd*, 219 B.R. 55 (D.N.J. 1998) (same); *accord Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 677–79 (S.D. Tex. 2007) (finding TUFTA's time limitation must yield to federal law because "[s]ection 546(a) is designed to give the trustee some breathing room to determine which claims to bring under section 544" (internal quotation omitted)). The preemption interplay between the Code and TUFTA is addressed below.

**2.**

Whether an amended pleading in federal court relates back to a prior pleading is a procedural question that invokes Federal Rule 15(c). *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir. 1987) ("Rule 15(c) is a truly procedural rule because it governs the in-court dispute resolution processes rather than the dispute that brought the parties into court."). And though Federal Rule 15(c) applies and has its own standard for relation back, it also allows relation back if "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. Proc. 15(c)(1)(A). With the amendments of 1991, the Advisory Committee Note explains that "[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." Fed. R. Civ. P. 15(c)(1) advisory committee's note to 1991 amendment.

This, then, raises Texas Rule § 16.068, which provides that "[i]f a filed pleading relates to a cause of action . . . that is *not* subject to a plea of limitation when the pleading is filed, a subsequent amendment . . . to the pleading that changes the facts or grounds of liability . . . is *not* subject to a plea of limitation unless the amendment . . . is wholly based on a new, distinct, or different transaction or occurrence." Tex. Civ. Prac. & Rem. Code § 16.068 (emphasis added).

The Fifth Circuit, consistent with the Advisory Committee Note, has construed Federal Rule 15(c)(1)(A) to mean that the court should consider *both* 15(c) and Texas Rule § 16.068, and whichever is more forgiving or works to save the claim is the one that controls. *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 901–02 (5th Cir. 2012) ("The consequence of Rule 15(c)(1)(A) is that a claim will be deemed to relate back if relation back is permitted under state law, even if it is not permitted under federal law." (internal quotation omitted)); *see also U.S. Bank, N.A. v. Smith (In re Smith)*, 524 B.R. 125, 143 (Bankr. S.D. Tex. 2015) ("[T]he Texas relation back rule applies if it is more forgiving than the federal relation back rule.").

The issue of relation back is more complicated here, however. As stated, § 24.010 of TUFTA provides that the fraudulent transfer or obligation claim is *extinguished* if not timely brought. And given this, can the relation-back doctrine under either federal or state law be invoked to save a late-filed and thus extinguished claim?

## C.

For many years, courts, when addressing § 24.010 of TUFTA, had to guess whether the Texas Supreme Court considered it a statute of limitations or a statute of repose. *See Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 195 (5th Cir. 2013) (having to *Erie* guess concerning TUFTA's § 24.010); *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 676 (S.D. Tex. 2007) ("The Texas Supreme Court has yet to rule on whether the TUFTA's four-year provision is a statute of repose."). This ended with the Texas Supreme Court's ruling in *Nathan v. Whittington*, in which it defined § 24.010 as a statute of repose. 408 S.W.3d 870, 874 (Tex. 2013) ("Considering the actual language of TUFTA section 24.010 and the Commissioners' comments to UFTA section 9 on which it is modeled, we agree . . . that it is a statute of repose, rather than a statute of limitations."). This ruling is critical to the disposition of the issues here.

## 1.

Recognition by the courts of the distinction between a statute of repose and a statute of limitations is likewise a relatively new development. "For many decades, the majority rule in this country provided that statutes of limitations *are* statutes of repose." *Wenke v. Gehl Co.*, 2004 WI 103, ¶ 52, 274 Wis. 2d 220, 254, 682 N.W.2d 405, 422 (emphasis added) (quotation omitted). Historically, Texas followed the majority rule and treated the two as the same. *Nelson v. Krusen*, 678 S.W.2d 918, 926 (Tex. 1984) (Robertson, J., concurring) ("Texas courts have traditionally used the terms 'limitation' and 'repose' interchangeably, since one purpose of a statute of limitation is to permit repose."). Beginning in the early 1980s, the trend to separate them arose as "an attempt to

highlight by semantic distinction a number of very real differences." *Id.* While statutes of

limitation are "primarily instruments of public policy and of court management," statutes of repose

"make the filing of suit within a specified time a substantive part of the plaintiff's cause of action."

*Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987). A recent Supreme Court opinion

explained the difference:

> Although there is substantial overlap between the policies of the two types of statute,
> each has a distinct purpose and each is targeted at a different actor. Statutes of
> limitations require plaintiffs to pursue diligent prosecution of known claims. Statutes
> of limitations promote justice by preventing surprises through plaintiffs' revival of
> claims that have been allowed to slumber until evidence has been lost, memories have
> faded, and witnesses have disappeared. Statutes of repose also encourage plaintiffs to
> bring actions in a timely manner, and for many of the same reasons. But the rationale
> has a different emphasis. Statutes of repose effect a legislative judgment that a
> defendant should be free from liability after the legislatively determined period of
> time. Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh
> start or freedom from liability. Indeed, the Double Jeopardy Clause has been described
> as "a statute of repose" because it in part embodies the idea that at some point a
> defendant should be able to put past events behind him.

*CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014) (internal citations and quotations omitted),

*reh'g denied*, 135 S. Ct. 23 (2014).

In two opinions that preceded *Nathan*, the Texas Supreme Court made the same distinction.

The first case was *Galbraith Eng'g Consultants, Inc. v. Pochucha*, which dealt with litigation over

the design and construction of a house. 290 S.W.3d 863, 864 (Tex. 2009). The homeowners sued

the builder, who then designated the designer and installer of the faulty French drain system as

responsible third parties. *Id.* at 865. The homeowners then amended their pleadings to add the

designer (Galbraith) as a defendant pursuant to § 33.004(e) of the Texas Rules. *Id.* Galbraith

contested joinder, claiming the statute of repose in Texas Rule § 16.008 had lapsed, barring any suit

against him. *Id.* In reversing the ruling of the court of appeals, the Texas Supreme Court sided with

Galbraith because he was protected by the statute of repose and any claim against him had

extinguished. *Id.* at 869 ("[W]e have found nothing in section 33.004 or the proportionate

responsibility scheme to convince us that the Legislature intended to revive claims extinguished by a statute of repose."). Describing the difference between statutes of repose and those of limitation, the court said:

> Statutes of repose typically provide a definitive date beyond which an action cannot be filed. Unlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action. Repose then differs from limitations in that repose not only cuts off rights of action after they accrue, but can cut off rights of action before they accrue. And while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time. Thus, the purpose of a statute of repose is to provide absolute protection to certain parties from the burden of indefinite potential liability.

*Id.* at 866 (internal citations and quotations omitted).

A year later, the Texas Supreme Court, for the first time, decided whether the Texas Constitution's Open Courts provision could save a malpractice claim extinguished by a statute of repose. *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 284 (Tex. 2010). Rankin, the plaintiff, discovered a sponge from a medical procedure left in her abdomen, but not until one year after the statute of repose ran out. *Id.* at 285. Rankin submitted evidence that there was no reasonable way she could have discovered the sponge within the period of repose and that to deprive her of a remedy was unconstitutional under the Texas Open Courts provision. *Id.* The court of appeals agreed with Rankin, but the Texas Supreme Court reversed. *Id.* at 292. The court denied her claim with the justification that "[a] statute of repose, by design, will always bar some otherwise-valid claims, but that result is the whole point of a statute of repose, and is the price of repose." *Id.* (internal quotation omitted). The court said as follows:

> [T]he essential function of all statutes of repose is to abrogate the discovery rule and similar exceptions to the statute of limitations. . . . A statute of repose, by design, creates a right to repose precisely where the applicable statute of limitations would be tolled or deferred. More to the point, a statute of repose serves no purpose *unless* it has this effect. To hold that a statute of repose must yield to the plaintiff's inability to discover her injury would treat a statute of repose like a statute of limitations, and would effectively repeal this and all other statutes of repose. . . .

Page 13

. . . .

Under the court of appeals' decision, all plaintiffs have a "reasonable time" to discover their injuries, a holding that means never-ending exposure to liability . . . . This indefiniteness wholly undermines the purpose of House Bill 4 and of statutes of repose generally: to declare a no-exceptions cut-off point and grant a substantive right to be free of liability.

*Id.* 290–91 (emphasis in original).[11]

And then the Texas Supreme Court decided *Nathan* and identified TUFTA's § 24.010 as a statute of repose that extinguished any attempt at revival under Texas Rule § 16.064. *Nathan v. Whittington*, 408 S.W.3d 870, 876 (Tex. 2013). Whittington, the plaintiff, timely filed a claim under the Uniform Fraudulent Transfer Act in a Nevada court; the court dismissed the case for a lack of jurisdiction. *Id.* at 876. Whittington refiled in Texas within sixty days pursuant to Texas Rule § 16.064 but after a lapse under TUFTA's § 24.010. *Id.* The Texas Supreme Court again reversed the court of appeals and denied Whittington's claim while "acknowledg[ing] that TUFTA's statute of repose may work an inequitable hardship on Whittington in this case." *Id.* It added, "the Legislature has balanced this hardship against the benefits of the certainty that a statute of repose provides by extinguishing claims upon a specific deadline." *Id.* The result appears harsh, but the court "s[aw] no need to compromise the statute of repose jurisprudence of cases like *Galbraith* and *Rankin*." *Id.* at 874.

## 2.

The holding of *Nathan* is difficult to reconcile with the Fifth Circuit's ruling a *few months prior* in *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 193–96 (5th Cir. 2013). *Janvey* involved a Ponzi scheme perpetrated by R. Allen Stanford, which was eventually

---

[11] The Texas Supreme Court held firm to this principle in 2014, denying a claim from a mother on behalf of her child for injuries sustained during an emergency cesarean that later allegedly resulted in permanent neurological injury and disability for the child. *Tenet Hospitals Ltd. v. Rivera*, 445 S.W.3d 698, 710 (Tex. 2014) (Lehrmann, J. dissenting) ("Statutes of repose present harsh barriers to the administration of justice. Today the Court extends this obstacle to situations involving the most vulnerable amongst us—our children."), *reh'g denied* (Nov. 21, 2014).

shut down by the Securities and Exchange Commission (SEC) for multiple violations of federal securities laws. *Id*. at 188–89. At the request of the SEC, the district court appointed a receiver "to preserve the Stanford corporations' resources and pursue the corporations' assets that were in the hands of third parties as the result of fraudulent conveyances." *Id.* at 189.

To resolve the fraudulent conveyance claim, the court was tasked with interpreting TUFTA's § 24.010 because many of the claims occurred beyond TUFTA's four-year deadline. *Id.* at 193. Rather than setting a specific deadline, the *Janvey* court focused on the "discovery exception" of § 24.010, which for claims of actual fraudulent transfer, allows a claim "within four years after the transfer was made or the obligation was incurred *or*, *if later*, *within one year after the transfer or obligation was or could reasonably have been discovered by the claimant*." Tex. Bus. & Com. Code § 24.010(a)(1) (emphasis added). The court construed the discovery element to mean not when the receiver learned of the transaction itself, but when the receiver learned that the transaction was *fraudulent*. *Janvey*, 445 S.W.3d at 195. This meant that the clock for TUFTA did not even start until it was established that the receiver discovered the fraudulent nature of the transaction. *Id.* at 193 ("Under TUFTA . . . , a fraudulent-conveyance claim does not accrue until the claimant knew or reasonably could have known both of the transfer and that it was fraudulent in nature."). The court implied that a pre-trial dismissal could occur only upon a defendant pleading the affirmative defense of limitations and then establishing via summary judgment evidence that the plaintiff knew of the transaction and its fraudulent nature. *See id.* at 195.

### D.

The principle of relation back arises in rules of procedure, whether federal or state. As such, it cannot save an extinguished substantive claim. The overlap of substantive rights and procedural remedies is often difficult to disentangle, however. Procedural rules are a creation of the courts to "protect [their] interest in the reliability of judgments, and in managing the progress of cases before

them. . . .  Substantive laws reflect a State's determination of the proper relationship between the people and property within its boundaries."  *Goad v. Celotex Corp.*, 831 F.2d 508, 511–12 (4th Cir. 1987).  Substantive laws trump federal procedural rules, which have no power to "abridge, enlarge, or modify any substantive right."  28 U.S.C.A. § 2072(b) (West).[12]

The issues here provide a clear example of this principle.  While Rule 15(c)'s relation back rule is "truly procedural,"[13] statutes of repose "creat[e] a substantive right."[14]  Relation back is not allowed here: TUFTA's § 24.010 is a statute of repose and is immune to procedural tolling.  *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 23 F. Supp. 3d 203, 208 (S.D.N.Y. 2014) ("[T]he Federal Rules[] could not alter the limited nature of the substantive right created by a statute of repose because the statute authorizing the procedural rules subordinates them to substantive rights."); *see also Meyer v. Argent Mortgage Co., LLC (In re Meyer)*, 379 B.R. 529, 540–41 (Bankr. E.D. Pa. 2007) ("Here, the application of Rule 15(c)'s relation back provision to add a defendant would resurrect jurisdiction over an extinguished claim. . . .  Just so, this Court lacks subject matter jurisdiction . . . now that the three year rescission period has expired."); *Wenke v. Gehl Co.*, 2004 WI 103, ¶ 57, 274 Wis. 2d 220, 261, 682 N.W.2d 405, 425 ("Because of the substantive nature of statutes of repose, courts have treated the effect of the period expiring to be jurisdictional."); *Litzler v. Cooper (In re Margaux Tex. Ventures, Inc.)*, No. 13-03221, 2014 Bankr. LEXIS 2542, at *53 (Bankr. N.D. Tex. May 22, 2014) ("Statutes of repose are jurisdictional in nature . . . sometimes referred to as a 'jurisdictional bar.'") (citation omitted).[15]

---

[12] Federal Rule 82 and Rule 9030 both reflect that limitation of power by stating the rules "do not extend . . . the jurisdiction of the courts."

[13] *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir. 1987).

[14] *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009).

[15] The present case is distinguishable from those situations where a substantive federal law conflicts with a statute of repose, necessitating a preemption analysis.  Section 546 of the Code can, for example, preempt UFTA's statute of repose. *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 675–78 (S.D. Tex. 2007); *Rund v. Bank of America Corp. (In re EPD*

Relation back under Texas Rule § 16.068 does not work to revive Trustee's claim. "A claim extinguished by operation of a statute of repose does not 'relate back' to the filing of an earlier pleading as it would in the case of a statute of limitation." *Aguilar v. Trujillo*, 162 S.W.3d 839, 853 (Tex. App.—El Paso 2005, pet. denied).

That procedural rules of relation back cannot revive a claim that is extinguished by a statute of repose seems clear enough. But the tension between the Texas Supreme Court's decision in *Nathan* and the Fifth Circuit's ruling in *Janvey* persists. And this tension (perhaps conflict) is not necessarily resolved by the fact that *Janvey* was decided *before Nathan*.

TUFTA's § 24.010(1) provides that the claim is viable "within four years . . . *or, if later*, within one year after the transfer . . . could reasonably have been *discovered* by the claimant." (emphasis added). This is oxymoronic: a repose statute with a discovery exception. The court in *Nathan* did not address the effect of the discovery provision. At least one federal court to interpret TUFTA post-*Nathan* and *Janvey* considered this omission and concluded that "TUFTA contains a statute of repose *with* a discovery exception." *Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc.*, 33 F. Supp. 3d 947, 974 (N.D. Ill. 2014) (emphasis added). The court in *Trinity Industries* went further, too; it denied the defendants' motion to dismiss the plaintiff's fraudulent transfer claims brought under TUFTA, and in so doing, considered the "discovery exception" as an affirmative defense to be raised and proved by the defendants.

Section 24.010 is indeed a statute of repose, but Defendants ignore plain language in § 24.010(a)(1) that Texas courts have categorized as a type of discovery rule

---

*Inv. Co., LLC)*, 523 B.R. 680, 691–92 (B.A.P. 9th Cir. 2015); *Gibbons v. First Fidelity Bank, N.A., AHC, Inc. (In re Princeton–New York Investors, Inc.)*, 199 B.R. 285, 297 (Bankr. D.N.J. 1996). Preemption is possible because §§ 544 and 546 are a creation of the Bankruptcy Code, derived from the federal government's congressional powers listed in Article I, Section 8, of the Constitution. *See Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 518–20 (5th Cir. 2009). The Bankruptcy Code thus vests the trustee with a substantive right, independent of state law. *EPD Inv. Co.*, 523 B.R. at 685 ("A trustee's right to bring a state-law fraudulent transfer action under § 544(b) is a creation of the Bankruptcy Code; it is not an action to assert an independent state law created right."). And with the Bankruptcy Code's goal of maximizing the estate for the benefit of creditors, § 546 "was created with the intent to give trustees sufficient time or 'breathing room' to determine whether to assert any claims under § 544." *Id.* at 691. The same is true of the Code's § 108. *Stanley*, 579 F.3d at 516.

exception. *See, e.g., Duran*, 71 S.W.3d at 838. In any event, "a plaintiff is not required to plead facts in the complaint to anticipate or defeat affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012). A court will only dismiss a cause of action based on an affirmative defense "when a plaintiff's complaint ... sets out all of the elements of an affirmative defense," and demonstrates that the action is not timely. *Id.* Because TUFTA's statute of repose contains a discovery rule exception, dismissal is inappropriate. Whether Plaintiff reasonably should have discovered the fraudulent transfers earlier is a question of fact, to be resolved by a jury (or on a summary judgment record).

*Id*. at 975.

Both the discovery exception, which is explicit, and its treatment as an affirmative defense are contrary to the purpose of repose. "[T]he essential function of all statutes of repose is to abrogate the discovery rule . . . . More to the point, a statute of repose serves no purpose *unless* it has this effect." *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 290 (Tex. 2010) (emphasis in original); *accord CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014) ("The statute of repose limit is 'not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered.'" (quoting 54 C.J.S., Limitations of Actions § 7, p. 24 (2010))), *reh'g denied*, 135 S. Ct. 23 (2014).

A defendant should not have to raise an affirmative defense to avoid a claim extinguished by repose. An "affirmative defense" is defined as "[a] defendant's assertion of facts . . . that, if true, will defeat the plaintiff's . . . *claim*." *Affirmative defense*, Black's Law Dictionary (10th ed. 2015) (emphasis added). A statute of repose extinguishes the claim; it ceases to exist. To construe TUFTA's statute of repose to require a defendant to come-up with conclusive evidence dating back indefinitely to avoid protracted litigation is at odds with the purpose of such a statute. *See Rankin*, 307 S.W.3d at 290 ("To hold that a statute of repose must yield to the plaintiff's inability to discover her injury would treat a statute of repose like a statute of limitations, *and would effectively repeal this and all other statutes of repose*." (emphasis added)); *accord Galbraith,* 290 S.W.3d at 866 ("[T]he *purpose* of a statute of repose is to provide absolute protection to certain parties *from*

*the burden of indefinite potential liability*." (quotation omitted and emphasis added)); *CTS Corp.*, 134 S. Ct. at 2187 ("[A] statute of repose can prohibit a cause of action *from coming into existence*." (emphasis added)); *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir.1987) ("In contrast to statutes of limitation, statutes of repose serve primarily *to relieve potential defendants from anxiety over liability for acts committed long ago*." (emphasis added)).

Instead, with the discovery exception, the plaintiff should first plead—with supporting factual allegations—the inability to discover the transfer in order to establish a claim even exists that requires an answer from the defendant and which the court has jurisdiction to decide. *See MSKP Oak Grove, LLC v. Venuto*, No. 10-6465, 2014 WL 4385979, at *5 (D.N.J. Sept. 5, 2014) (placing no burden on defendant to establish timing of plaintiff's knowledge because "[p]laintiff does not invoke the one-year discovery rule in this case").

Here, neither party has raised a question concerning the timely discovery of the fraudulent obligation claims. Their dispute is whether claims can relate back or not. Trustee terms his failure to include it in the original complaint as a "mistake."[16] The Court can only conclude that timely discovery of the alleged fraudulent obligations was not a problem.

## E.

## 1.

As the parties' principal dispute here is whether certain claims relate back or not, and given that TUFTA's statute of repose contains a discovery element (which is not necessarily consistent with a statue of repose), the Court addresses the relation back arguments. Federal Rule 15(c)(1)(B) mandates relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

---

[16] *Trustee's Amended Motion for Leave to Amend the Complaint*, Doc. No. 42 ¶ 15; *Trustee's Brief in Response to Motion to Dismiss Second Amended Complaint*, Doc. No. 85 ¶ 14.

Even though the text is straightforward, "that alone does not help us figure out what conduct, transaction, or occurrence is the same." *Mayle v. Felix*, 545 U.S. 644, 666 (2005) (Souter, J. dissenting). To determine relation back, one must balance the competing purposes of the rule: the desire to resolve disputes on their merits with the defendant's interest in the protection provided by the statute of limitations. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010). Amendments that merely rectify technical deficiencies or provide greater clarity to the facts alleged in the original pleading relate back because the defendant is given sufficient notice within the limitations period. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 102–03 (5th Cir. 1995). In such a situation, the dual purposes of relation back are achieved because "a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced." *Williams v. United States*, 405 F.2d 234, 236 (5th Cir. 1968).

And thus, though not mentioned as part of the rule, the "critical" inquiry is "whether the opposing party was put on notice regarding the claim raised" by the facts alleged in the original pleading. *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985); *accord Buchwald Capital Advisors LLC. v. JP Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons, Inc.*), 480 B.R. 480, 492 (S.D.N.Y. 2012) ("Although a plaintiff need not set forth 'an intricately detailed description of the asserted basis for relief, ... the pleadings [must] give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (alteration in original) (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984))), *aff'd*, 541 F. App'x 55 (2d Cir. 2013). There is no need to look beyond the pleading or into the minds of the parties. *Official Comm. of Unsecured Creditors of 360Networks (USA) Inc. v. Pirelli Commc'ns Cables and Sys. USA LLC (In re 360networks (USA), Inc.)*, 367 B.R. 428, 433 (Bankr. S.D.N.Y. 2007) ("Courts will not consider the subjective state of mind of what one party was thinking when it filed its original

complaint, but will instead objectively consider whether the original complaint put the other party on notice as to the cause of action being asserted against it."). "[T]he focus is 'not . . . the caption given a particular cause of action, but . . . the underlying facts upon which the cause of action is based.'" *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir. 2005) (quoting *Watkins v. Lujan,* 922 F.2d 261, 265 (5th Cir. 1991)). Put simply, "[t]he test is whether the original complaint apprised the [defendant] of the . . . claims set forth in the . . . amended complaint." *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 864 (5th Cir. 1993). Accordingly, claims that "assert[] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth" do not relate back. *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

Here, Trustee is attempting to assert a new ground for relief through facts that differ in both time and type from those in the original pleading: the fraudulent obligation count from the Capmark Application does not relate back. The nature of Trustee's action in the Original Complaint was to "avoid and recover *transfers* . . . during the *2-year period* prior to the bankruptcy filing." Original Complaint ¶ 1(a) (emphasis added). Trustee listed the statutory predicates for relief "to avoid and recover *transfers.*" *Id.* ¶ 2 (emphasis added). Counts one and two both sought avoidance of "2-Yr Transfers." *Id.* ¶¶ 27–41. The prayer for relief requested that the Court "declar[e] that the 2-Yr Transfers are avoided and set aside as fraudulent transfers." *Id.* at 13. Likewise, the facts presented in the Original Complaint and Exhibit A allege that "[t]ransfers made during the two-year period prior to the Petition Date are, collectively, the '**2-Yr Transfers**.' The 2-Yr Transfers are, collectively, the '**Avoidable Transfers**.'" *Id.* ¶ 19 (emphasis in original). The word "obligation" does not appear in the Original Complaint, and the complaint makes no reference to a relationship between AHF and Citi beyond two years prior to the petition date.

The amended complaints tell a different story. They include counts that seek to "avoid the AHF obligations incurred under the applications as fraudulent obligations." Second Amended

Complaint ¶ 1. The statutory predicates are listed "to avoid obligations and recover transfers." *Id.* ¶ 3. The transactions described in the counts are now "Avoidable Obligations" and "Avoidable Transfers." *Id.* ¶¶ 28–45. The prayer for relief requests that the Court "declar[e] that the Avoidable Obligations and the Avoidable Transfers are avoided." *Id.* at 11. Most important, the facts now allege a relationship between AHF and Citi that began in 2006, with AHF applying to Capmark Finance, Inc. (which Citi later purchased) to refinance debt. *Id.* ¶ 6.

The Original Complaint gave Citi no notice of any attempt to avoid obligations; it does not allege the facts that support the newly raised fraudulent obligation counts. The amended complaints "assert[] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650. The fraudulent obligation count from the Capmark Application cannot relate back through Federal Rule 15(c)(1)(B).[17]

## 2.

As addressed above, the Court must apply *both* the federal and state relation-back tests. *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 901–02 (5th Cir. 2012). Also mentioned above,

---

[17] *See Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 216 (5th Cir. 1999) (finding tortious interference claim and failure to return inventory claim arose from separate conduct); *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 863–64 (5th Cir. 1993) (denying relation back where movant's amendment "attempted to add a new legal theory unsupported by factual claims raised in the original complaint"); *EnerQuest Oil & Gas, LLC v. Plains Expl. & Prod. Co.*, 981 F. Supp. 2d 575, 615 (W.D. Tex. 2013) (denying relation back even though there was "some overlap between the lands involved" because the two claims were "plainly separate transactions or occurrences"), *reconsideration denied*, No. SA:12-CV-542-DAE, 2014 WL 1652599 (W.D. Tex. Apr. 24, 2014); *The Cadle Co. v. Riggert (In re Riggert)*, 399 B.R. 453, 460 (Bankr. N.D. Tex. 2009) (denying relation back when movant attempted to "raise entirely new grounds for objecting to discharge—grounds that involve conduct in 2004, 2005, and 2008 that was wholly separate from the 2007 Homestead Refinancing (the latter of which was the only act complained of, in the original Complaint)"); *accord In re 360networks (USA) Inc.*, 367 B.R. at 434 (denying relation back because the original complaint "fail[ed] to set forth any facts putting the Defendant on notice that additional transactions may be challenged"); *In re M. Fabrikant & Sons, Inc.*, 480 B.R. at 493 (denying relation back because the amended complaint "alleges a new cause of action and reaches for a general hook to hang it on"); *Appalachian Oil Co., Inc. v. Ky. Lottery Corp. (In re Appalachian Oil Co., Inc.)*, No. 09-50259, 2011 WL 3742045, at *4-5 (Bankr. E.D. Tenn. Aug. 25, 2011) (denying relation back because "[n]o reference whatsoever is made to the 'after the preference period' in the original complaint," and "[n]othing in the complaint suggests or places the Defendant on notice that the Debtor was seeking recovery of anything other than the series of payments that occurred in the 90-day preference period."); *In re Musicland Holding Corp.*, No. 06-10064 (SMB), 2010 WL 3719310, at *3 (Bankr. S.D.N.Y. Sept. 16, 2010) (denying relation back because "[t]he allegations regarding the fraudulent nature of the Transfers in the Amended Complaint did not put the defendants on notice that the plaintiff was also challenging the Release as fraudulent").

the rule in the lower courts of Texas is that a new claim barred by a statute of repose cannot relate back. *Aguilar v. Trujillo*, 162 S.W.3d 839, 853 (Tex. App.—El Paso 2005, pet. denied); 50 TEX. JUR. 3D LIMITATION OF ACTIONS § 139 ("A claim extinguished by operation of a statute of repose does not relate back to the filing of an earlier pleading as it would in the case of a statute of limitation."). But the Texas Supreme Court has yet to explicitly state as much, so the Court will apply an *Erie* analysis.

The wording of Texas Rule § 16.068 differs from Federal Rule 15(c), but the application is virtually the same. *Lexington Ins. Co. v. Daybreak Exp., Inc.*, 393 S.W.3d 242, 244 (Tex. 2013). In Texas, a new cause of action relates back "unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." Tex. Civ. Prac. & Rem. Code Ann. § 16.068 (West). Still, amended complaints relate back "only if they ar[i]se out of the same transaction." *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 695 (Tex. App.—El Paso 2009, no pet.). If "the amended petition sets up a distinct and different claim from that asserted in the previous petitions, the new claim does not relate back." *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 122 (Tex. 2004). The inquiry applied is the same as that of the federal courts: Was the opposing party put on notice of the new claim in the original pleading? *See Lexington Ins. Co. v. Daybreak Exp., Inc.*, 393 S.W.3d 242, 244 (Tex. 2013). To resolve that question, Texas courts "focus on the factual statement of the initial charge because that is the 'crucial element.'" *City of Sugar Land v. Kaplan*, 449 S.W.3d 577, 581 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citation omitted).

As stated, the factual statement in the Original Complaint provided no notice to Citi that Trustee was seeking to avoid obligations incurred beyond two years from the petition date: the amended complaints do not relate back under the Texas Rule.

**3.**

Trustee argues that his Second Amended Complaint relates back to the unopposed First Amended Complaint which relates back to the Original Complaint. By this theory, all claims of the Second Amended Complaint are timely. And Trustee is effectively contending that Citi waived the question of relation back. As Trustee spells out in his brief, the First Amended Complaint was approved—resulting in the Second Amended Complaint—because the First Amended Complaint accorded some notice of Trustee's fraudulent obligation claims. As addressed, there were other problems with the First Amended Complaint. The Second Amended Complaint cleaned-up the problem areas and, finally, provides a plain statement of Trustee's causes of action. The Court pointed out that any prejudice occasioned by the passage of time from the First Amended Complaint to the Second Amended Complaint was minimal.

Trustee, on both motions for leave to amend, requested that the claims relate back. The relation back question was not decided in either instance, however. Citi did not oppose the first motion, and an agreed order was entered approving the filing of the First Amended Complaint; but it did not explicitly address whether the claims related back. On the second motion that resulted in the Second Amended Complaint, the Court did not decide the relation back point, noting that the issue of relation back had to be considered within the context of the First Amended Complaint. *Memorandum Opinion*, Doc. No. 65 at 4. More to the point, the question of whether an amended pleading should be allowed is different from whether some or all counts relate back. With many amendments, relation back is not an issue. And whether a claim relates back is a more exacting and substantive question than is the propriety of an amendment.[18] Besides, before relation back is

---

[18] In allowing Trustee to amend the First Amended Complaint, the Court, on Citi's motion seeking reconsideration, found that "any additional hardship imposed on Citi by going back beyond two years [was] minimal." *Memorandum Opinion and Order* [Doc. No. 75]. This is so as the alleged fraudulent obligations that were added preceded the alleged transfers of the Original Complaint by a few months only. This does not resolve the question of whether the claims relate back, which is addressed by a different provision of Rule 15 and, as stated, is subject of a far more rigorous standard.

addressed, the parties and the Court must know what the claims are. The issue of relation back has not previously been waived by Citi or decided by the Court.

The Court will dismiss the Avoidable *Obligation* (from the Capmark Application) cause of Count One and Count Two and all requests for relief of Count Three concerning such cause.

**F.**

Citi's second point is that Trustee's cause to avoid actual fraudulent transfers under §§ 548(a)(1)(A), 544, and TUFTA fails to meet the heightened pleading standards of Federal Rule 9(b), applicable here through Rule 7009. Federal Rule 9(b) states: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Fifth Circuit has "succinctly described Rule 9(b) as requiring the plaintiff to set forth the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, 15-30043, 2015 WL 5693302, at *2 (5th Cir. Sept. 29, 2015) (citation omitted). Failure to meet the pleading requirements of Federal Rule 9(b) results in a 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Dismissals for insufficient pleadings, however, "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quotations omitted).

Fraud's heightened pleading standards exist "to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). The more stringent requirements thus lose some of their luster in avoidance claims for fraudulent transfers: unlike typical fraud claims, the fraud alleged is that of the debtor-transferor, not the transferee-defendant. *Wagner v. Galbreth*, 500 B.R. 42, 54 (D.N.M. 2013)

("Fraudulent intent for purposes of establishing a claim for actual fraud is determined based on the intent of the transferor . . . rather than the transferee.").  In this case, the allegations do not challenge Citi's "goodwill or reputation."

Given the nature of a fraudulent transfer claim, courts are in disagreement on whether 9(b)'s standards should even apply to fraudulent transfers.  In the Fifth Circuit, such question still lingers. *Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir. 2011) ("We need not and do not address the issue of whether heightened pleading is required [for fraudulent transfers]."). Many lower courts apply the heightened 9(b) standards, however.[19]  And bankruptcy courts in this circuit have chosen to apply it "[o]ut of an abundance of caution."  *Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 197 (Bankr. W.D. Tex. 2015); *see also Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Tex. Rangers Baseball Partners)*, 498 B.R. 679, 712 (Bankr. N.D. Tex. 2013) (finding it unnecessary to decide if 9(b) must apply because movant met the standard anyway).

It is important to note that, for fraudulent transfer actions, courts often apply a somewhat relaxed but still heightened standard.  This is because a trustee, as plaintiff, is an outsider to the original transactions.[20]  Some courts relax the standard even more where the trustee is dealing with abnormally complex issues.  *O'Connell v. Penson Fin. Servs., Inc.* (*In re Arbco Capital Mgmt., LLP*), 498 B.R. 32, 40–41 (Bankr. S.D.N.Y. 2013) ("Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues . . . the trustee's handicap increases, and even greater latitude should be afforded." (internal quotations omitted)).

---

[19] *See Wagner v. Galbreth*, 500 B.R. at 53; *Zazzali v. AFA Fin. Grp., LLC (In re DBSI, Inc.)*, 477 B.R. 504, 509 (Bankr. D. Del. 2012); *Kerr v. Venetian Casino Resort (In re Medici)*, 524 B.R. 902, 905 (Bankr. N.D. Ga. 2014); *Silverman v. Meister Seelig & Fein, LLP (In re Agape World, Inc.)*, 467 B.R. 556, 569 (Bankr. E.D.N.Y. 2012); *Dershaw v. Ciardi (In re Rite Way Elec., Inc.)*, 510 B.R. 471, 480 (Bankr. E.D. Pa. 2014).

[20] *See Sher v. JP Morgan Chase Funding Inc. (In re TMST, Inc.)*, 518 B.R. 329, 349–50 (Bankr. D. Md. 2014 ("[W]here the plaintiff is a third party trustee and an outsider to the alleged fraudulent transactions, the Rule 9(b) standard should be applied more liberally."), *vacated in part on other grounds*, 09-17787-DK, 2014 WL 6390312 (Bankr. D. Md. Nov. 14, 2014); *Wagner v. Galbreth*, 500 B.R. 42, 54 (D.N.M. 2013) (same); *In re DBSI, Inc.*, 477 B.R. at 509 (same); *In re Medici*, 524 B.R. at 905–06 (same).

The degree of particularity that 9(b) requires, therefore, is entirely reliant on the nature and context of the underlying fraud claim. *See* 5A Fed. Prac. & Proc. Civ. § 1298 (3d ed.).

To meet the "who, what, when, where, and how" particularity requirement in fraudulent transfer claims, courts often look for the so-called "badges of fraud." *See, e.g., In re Think3, Inc.*, 529 B.R. at 198. Because of the difficulty of directly proving fraudulent intent, the badges of fraud "allow plaintiffs to provide allegations that amount to circumstantial evidence from which the requisite intent may be inferred." *In re Vivaro Corp.*, 524 B.R. 536, 554 (Bankr. S.D.N.Y. 2015). These badges are not necessarily uniform across the nation, but the Fifth Circuit has looked to the following badges of fraud for the purposes of § 548(a)(1)(A):

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of events and transactions under inquiry.

*Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008).

Courts differ on how they weigh the badges. Some courts say one or more is enough, *see, e.g., In re Medici*, 524 B.R. 902, 906 (Bankr. N.D. Ga. 2014), others say two is not enough, *In re Vivaro Corp.*, 524 B.R. at 554–55; some courts warn that "a badges-of-fraud analysis is not like a carnival dart game, where simply popping a given number of balloons entitles one to the big prize." *Sullivan v. Welsh (In re Lumbar)*, 446 B.R. 316, 331 (Bankr. D. Minn. 2011), *rev'd and remanded*, 457 B.R. 748 (B.A.P. 8th Cir. 2011). The diversity of contexts and circumstances prevent any sort of uniform consideration. The Court will do as others in this circuit have done: "no particular 'badge' is dispositive," but the pleading must establish a "confluence of multiple badges" to meet the 9(b) particularity standard for actual fraudulent intent. *Paradigm Air Carriers, Inc. v. Tex.*

*Rangers Baseball Partners (In re Tex. Rangers Baseball Partners)*, 498 B.R. 679, 712 (Bankr. N.D.

Tex. 2013). In the present case, the claim is raised by a third-party trustee tasked with unravelling

complicated business transactions.

The Second Amended Complaint clearly sets forth the who (both transferor and transferee),

what (money), and when (dates) of the transfers. It states that the funds were transferred by wire

transfers. And it is clear from the pleading that the alleged fraud arises from the lack of any direct

benefit or consideration flowing back to the transferor, AHF.

> AHF incurred the obligations and made the transfers with the intent to hinder, delay
> or defraud creditors. In addition, AHF was insolvent and did not receive reasonably
> equivalent value for the obligations incurred and the payments made to CitiGroup to
> explore refinancing of debt owed by insolvent subsidiaries of AHF. The equity
> interests of AHF in the subsidiaries which owed the indebtedness to be refinances [*sic*]
> or enhanced had no value to AHF and its creditors. Accordingly, AHF, while
> insolvent, did not receive reasonably equivalent value for incurring obligations and
> using its assets to pay fees and expenses to refinance or enhance indebtedness of
> insolvent subsidiaries.

Second Amended Complaint ¶ 17.

The badges arguably inform how the transfers were made with intent to defraud. Trustee

alleges no insider relationship between the parties and no retention of the property; and the final

transfer, as alleged, happened well outside a time-frame proximate to the bankruptcy filing of AHF.

Badges two, three, and six thus do not apply. But, by the Complaint, Trustee alleges that AHF

transferred the funds *for* insolvent subsidiaries and did so while insolvent itself. The Second

Amended Complaint goes on to allege that the transfers "(a) were made while AHF was insolvent

because (i) AHF's liabilities exceeded its assets, or (ii) AHF was generally unable to pay its debts as

they became due, or (b) the Transfers resulted in AHF becoming insolvent." *Id.* ¶ 25. These

allegations support badges one and four, with the alternative allegations of their effect (making

AHF insolvent) satisfying badge five.

The Court has an interest in deciding a case on its merits, and Trustee's lack of first-hand knowledge hamstrings his ability to describe the subjective intent of AHF.  The Court denies Citi's 9(b) motion to dismiss.

## CONCLUSION

Citi's motion is granted in part and denied in part.  The amended TUFTA claim for a fraudulent obligation arising from the Capmark Application does not relate back.  Because it does not relate back, it is therefore untimely and will be dismissed with prejudice.  Citi's 9(b) motion to dismiss the claims of actual fraudulent transfers will be denied.  All other relief requested will be denied.

### End of Memorandum Opinion ###